UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| SHIRLEY RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 13-186-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| PNC BANK, NATIONAL ASSOC., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

This matter is pending for consideration of Defendant PNC Bank, National Association's ("PNC") motion for summary judgment. [Record No. 32] Plaintiff Shirley Riley filed this action against PNC, asserting claims of age and gender discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Kentucky Civil Rights Act ("KCRA"), and Title VII of the Civil Rights Act of 1964 ("Title VII"). [Record No. 1] In addition to PNC's motion, Riley has moved the Court to exclude certain evidence and arguments during trial. [Record No. 34] Having considered the parties' arguments, the Court will grant PNC's motion for summary judgment. As a result, Riley's motion in limine will be denied as moot.

**I.**

Until her termination on June 5, 2012, Riley was employed as a branch manager at PNC's Richmond Road location in Lexington, Kentucky. [Record No. 1, p. 2] Riley worked

for PNC and its predecessor banks for 35 years.[1]  [*Id.*]  Her supervisor at the time of her termination was Diane Richert, PNC's North Regional Manager in Lexington.  [*Id.*]  In 2008, the Richmond Road PNC was newly-designated as a "driver" branch, a distinction indicating that its higher volume of customer traffic required a productivity increase by its employees. [Record No. 32-2, p. 29]  As branch manager, Riley was responsible for the branch's overall productivity as well as her own.  Her duties included, *inter alia*, branch-wide sales, customer satisfaction coaching, business calls, and employee training.  [*Id.* at p. 64]  Riley was also required to undergo company-wide certification.  [*Id.* at p. 56]

In 2011, Riley received a negative performance evaluation from Richert.[2]  [Record No. 32-4]  The evaluation indicated that Riley's branch had failed to meet its goals for 2010 and was consistently receiving negative customer survey scores.  [*Id.*]  At the time, Riley agreed with Richert's evaluation and acknowledged that improvement was needed.  [*Id.* at p. 34]  The performance evaluation also indicated that Riley had not completed the required PNC certification.  [*Id.* at p. 57]  Riley attempted to obtain this certification on two occasions, but without success.  [*Id.*]

In June 2011, Riley received a written warning and corrective action plan based on her continued failure to meet expectations.  [*Id.* at p. 47]  Because Riley's allegedly deficient job performance did not improve, she received another written warning in December 2011. [Record No. 32-1, p. 7]  Riley had failed to complete and submit the required documentation

---

[1] Riley was hired by Second National Bank in 1977.  Second National Bank became Commerce National Bank, which then became National City Bank.  National City was acquired by PNC in 2008.  [Record No. 32-1, p. 3]

[2] Before this evaluation, there is no evidence that Riley was ever the subject of discipline in her 35 years at the bank. [Record No. 36, p. 6]

of her business sales calls and coaching sessions with employees. [*Id.*] Additionally, she was struggling with her own subordinates. [Record No. 36, p. 8] The branch's customer scores were still below expectations by early 2012, and Riley continued to neglect the required documentation. [Record No. 32-1, p. 8] In her self-assessment report, Riley admitted that she only "marginally achieve[d]." [Record No. 32-4, p. 35]

Following a six-week probation period in April 2012, Riley's job performance showed no improvement. Thereafter, Richert and her supervisor, James Barber, decided to terminate Riley's employment. [Record No. 32-5, p. 3] On June 5, 2012, Riley was fired from PNC at the age of 54. [Record No. 1, p. 2] Her position was later filled by a 33-year-old male. [Record No. 34-2, p. 11] As previously noted, Riley filed this action, asserting claims of age and gender employment discrimination.

## II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir.

2008). However, once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475, 586 (1986)). Instead, the nonmoving party must present "significant probative evidence" of a genuine dispute . . . to defeat the motion for summary judgment. *Chao*, 285 F.3d at 424. The nonmoving party cannot simply rely upon the assertions in its pleadings. It must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

## III.

PNC argues that Riley has failed to establish that PNC's stated reason for her termination was a pretext for gender and age discrimination. Title VII of the Civil Rights Act prohibits an employer from discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, both the ADEA and the KCRA make it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); K.R.S. § 344.040(1) and (2).[3] Cases under the ADEA are analyzed according to

---

[3] The Kentucky Civil Rights Act's discrimination provisions track federal law and should be interpreted consonant with federal interpretation. *Gragg v. Somerset Technical College*, 373 F.3d 763 (6th Cir. 2004) (citing *Meyers v.*

the same framework as discrimination cases under Title VII. *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).

A plaintiff may establish a claim under the ADEA, Title VII, or KCRA by offering either direct or circumstantial evidence of discrimination. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). Direct evidence is evidence which, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's action." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (quoting *Jacklyn v. Schering-Plough Health Care Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). Riley acknowledges that she does not have any direct evidence of age- or gender-based animus. [Record No. 36, p. 21] Where, as here, a plaintiff cannot provide direct evidence of improper motive, she may offer indirect and circumstantial evidence under the burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973).

Under the *McDonnell Douglas* framework, a plaintiff must first show that: (i) she was a member of a protected class; (ii) she was subjected to an adverse employment action; (iii) she was qualified for the position she held; and (iv) she was replaced by a person outside the protected class. *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006) (applying *McDonnell Douglas* test to Title VII claims); *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1115 (6th Cir. 2001) (applying *McDonnell Douglas* test to ADEA case). If the plaintiff is able to establish a *prima facie* case of discrimination, the burden shifts to the

---

*Chapman Printing Co.*, 840 S.W.2d 814 (Ky. 1992)). Accordingly, the Court will analyze these claims simultaneously.

defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Rowan v. Lockheed Martin Energy Sys., Inc.*, F.3d 544, 547 (6th Cir. 2004). If the defendant provides a legitimate, nondiscriminatory reason, the burden returns to the plaintiff to show that the reason given by the defendant was merely a pretext for decisions actually motivated by unlawful bias. *Id.*

### A. Prima Facie Case

Riley satisfies all four elements of a *prima facie* case. In age discrimination cases, the protected class includes employees at least 40 years old. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). At the time of her employment termination, Riley was a 54-year-old female. [Record No. 1, p. 2] Therefore, she was within the protected age and gender classes of employees. Neither party disputes that Riley was subjected to an adverse employment action when she was terminated in 2012. Riley was also qualified for her position. Generally, a plaintiff must demonstrate that she was performing at a level which meets her employer's expectations in order to satisfy the qualification prong of the *prima facie* case. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 662-63 (6th Cir. 2000). However, the Sixth Circuit has warned that the issue of qualification should be evaluated in light of the plaintiff's employment record "prior to the onset of the events that the employer cites as its reason" for its decision to terminate the employee. *Id*. Accordingly, the Court looks only at the evidence of Riley's employment prior to the events that gave rise to her termination.

Riley worked for PNC and its predecessor banks for over 35 years. The record reflects that Riley was not subject to disciplinary action before the poor performance

evaluation in 2011. [Record No. 36, p. 6] In fact, Riley rose quickly from bookkeeper to branch manager. [Record No. 1, p. 2] Although the record indicates that Riley failed to achieve PNC certification by the time of her termination, this was among the reasons given for her adverse employment actions and, therefore, will not be considered in determining her qualifications. Viewing the evidence independent of PNC's stated reason for terminating Riley, there is sufficient evidence for a reasonable jury to conclude the she was qualified for her position. Thus, the plaintiff has satisfied her *prima facie* burden of proving her qualification.

Next, Riley must show either that PNC replaced her with a non-protected worker or treated similarly-situated, non-protected employees more favorably. *Tuttle v. Metropolitan Government of Nashville*, 474 F.3d 307 (6th Cir. 2007); *Noble v. Brinker Int'l., Inc.*, 391 F.3d 715 (6th Circuit 2004). This burden at the *prima facie* stage is "not onerous" and is "easily met." *Cline*, 206 F.3d at 660.

Riley has presented evidence that she was replaced by a substantially younger male. Specifically, the evidence demonstrates that, at the time of the termination, Riley was 54 year old and replaced by a man in his thirties.[4] [Record No. 15, p. 3] *See Grosjean*, 349 F.3d at 336 ("Age differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement of the fourth part of age discrimination *prima facie* case.") Based on the foregoing, Riley has established a *prima facie* case of age discrimination.

---

[4] PNC has conceded that Jeremy Brooking, then 33, took over Riley's duties after her termination. [Record No. 32-1, p. 14]

### B. Legitimate, Nondiscriminatory Reason

Once a *prima facie* case is presented, the burden shifts to PNC to articulate a legitimate, nondiscriminatory reason for Riley's termination. According to PNC, Riley was fired because of her consistently poor job performance. Specifically, PNC asserts that Riley's customer service scores were low, she failed to obtain the required certification, and she had not submitted the required weekly documentation of her coaching sessions and business calls. PNC claims that, even after being placed on a corrective action plan and subsequent probation, Riley was unable to successfully complete the goals set forth by the bank. In addition, Riley consistently received poor job performance evaluations. These certainly qualify as legitimate, nondiscriminatory reasons for the company's actions. *See Succarde v. Federal Express Corp.*, 106 F. App'x 335, 339 (6th Cir. 2004) (poor performance is a legitimate, non-discriminatory reason for termination). Because PNC has satisfied its burden of showing that it had a legitimate, non-discriminatory reason for the termination, the burden returns to Riley to present evidence that PNC's proffered reason is merely a pretext for discrimination.

### C. Pretext

A plaintiff may establish pretext "by showing that the [defendant's] proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Riley does not allege that the evidence demonstrating these reasons has no basis in fact. Instead, she attempts to show pretext by presenting evidence that PNC's proffered reason did not actually motivate Richert's treatment of Riley and was

insufficient to warrant her termination. To succeed on this claim, a plaintiff must present evidence that employees not in the protected class "were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 471 (6th Cir. 2002). In determining whether the plaintiff has offered sufficient evidence that similarly-situated, non-protected employees were treated more favorably, the Sixth Circuit instructs courts to identify the appropriate comparable group of employees and then determine if there is evidence to support the assertion that the defendant treated these employees better than it treated the plaintiff because of the plaintiff's age or gender. *Ercegovich*, 154 F.3d at 350. A plaintiff must "demonstrate that he or she is similarly-situated to the non-protected employee in all relevant respects." *Id.* at 353. The comparable employees must have "dealt with the same supervisor, have been subject to the same standard and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* at 352 (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 (6th Cir. 1994)).

Riley compares her position with the following PNC employees: Jeremy Brooking, April Phillips, Nancy Porter, Brandon Cress, and Kim Thornton. [Record No. 36] Riley "need not demonstrate an exact correlation with the employee receiving more favorable treatment" to be considered similarly-situated." *Ercegovich*, 154 F.3d at 352. However, she and the employee must be similar in "all relevant aspects." *Id.* at 352. The analogous employee must have engaged in acts of "comparable seriousness." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611-612 (6th Cir. 2002). Much of Riley's evidence cannot be considered on

summary judgment because it is inadmissible hearsay.  *See Schering-Plough Healthcare*, 176 F.3d at 927 ("Hearsay evidence may not be considered on summary judgment."); *see also Quinn-Hunt v. Bennett Enters., Inc.*, 211 F. App'x 452, 458 (6th Cir. 2006) (excluding inadmissible hearsay evidence regarding comparable employees on summary judgment).  Regardless, even considering the hearsay testimony, Riley fails to identify a similarly-situated individual.

Jeremy Brooking is a 33-year-old male.  [Record No. 32-1, p. 14]  He replaced Riley as branch manager at the Richmond Road PNC when her employment was terminated.  [*Id.*]  However, Riley does not dispute that Brooking was qualified for the position of branch manager or that he had high customer service scores.  [*Id.*]  Brooking's previous branch experienced increased sales and production numbers under his management.  [*Id.* at p. 15]  Additionally, Riley fails to provide evidence that Brooking engaged in the same conduct.  Nothing in the record suggests that Brooking failed to submit the required paperwork or that his branch consistently fell short of its goals.  [*Id.* at p. 17]  As a result, while Brooking and Riley held similar positions under Richert's supervision, there is insufficient evidence that the two were similarly situated.

Riley also alleges that Richert discriminated against Riley in favor of April Phillips, a 27-year-old female.  [Record No. 36, p. 12]  According to Riley, Richert always seemed to be visiting Phillips' branch.  [Record No. 32-3, p. 66]  However, Riley admitted that she had no actual knowledge of how often these visits occurred or whether they were more frequent than visits to Riley's branch.  [*Id.*]  Further, Phillips' branch was not a driver branch and therefore her job responsibilities and goals were significantly less than Riley's.  [*Id.*]  As

with Brookings, there is no evidence in the record to suggest that Phillips failed to submit her required paperwork or that her branch fell behind on its goals. Therefore, Phillips and Riley are not similarly situated.

Next, Riley invites a comparison to Nancy Porter, a 48-year-old female branch manager. [Record No. 36, p. 15] The Court notes that Porter is not substantially younger than Riley; their age difference is only six years. The plaintiff suggests that Richert put more effort into Porter's branch than into Riley's. [Record No. 32-3, pp. 67-68] Riley premises this claim on the basis that Richert previously managed Porter's branch before becoming regional manager and wanted her former home-branch to succeed. [*Id.* at 68] However, this is not a prohibited motive, and Riley does not link this claim to any characteristic protected under Title VII or AEDPA. Absent some showing of a connection, these facts cannot support a claim of discrimination.

Similarly, Riley compares her position to that of 40-year-old Brandon Cress. [Record No. 36, pp. 16-17] Although Cress was also a branch manager, he did not manage a driver branch and, as a result, was subject to a lesser standard than Riley. [Record No. 32-1, p. 19] And unlike Riley, Cress completed his PNC certification. [*Id.*] Although Riley claims that Cress also failed to submit PNC's required documentation, Cress admits that Richert placed him under a corrective action plan similar to Riley's. [Record No. 36-3, p. 2] Although Cress's discipline has not yet led to his termination, evidence in the record suggests that his performance (unlike Riley's) improved after the implementation of corrective action. [*Id.*] Thus, Cress was neither similarly situated nor treated more favorably than Riley.

Riley also seeks to draw a comparison to Kim Thornton, the teller supervisor under Riley's direct supervision. [Record No. 36, p. 7] Riley argues that Thornton received more favorable treatment because Thornton was simply transferred to a lower-volume branch, rather than terminated. [Record No. 32-3, p. 72] The comparison is inapposite. First, Riley herself complained about Thornton's inexperience and suggested that she be transferred out of the Richmond Road branch. [Record No. 32-1, p. 19] Second, Thornton's position as a teller supervisor is not comparable to Riley's position of branch manager, and the two did not share the same immediate supervisor. Finally, Thornton was also put on probation after her conduct resulted in a misbalanced till. [*Id.*] This is hardly favorable treatment.

Riley has simply failed to present evidence that any single employee at PNC was a similarly-situated individual. Specifically, she has not shown that a younger or male branch manager at a driver branch with substantially similar job responsibilities who failed to obtain PNC certification and submit required documents was treated more favorably. Therefore, the comparisons invited by Riley are not to similarly situated individuals that can be used in the *McDonnell Douglas* analysis.

Finally, Riley suggests that Richter's failure to hire and promote female branch managers proves pretextual gender bias. [Record No. 36, p. 18] This unsupported allegation is inconsequential, as the Court has no evidence before it of the various qualifications of the male and female applicants for the positions or any details concerning the selection process. As the Sixth Circuit has noted, "mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Peters*, 285 F.3d at 470. Additionally, the record indicates that Richert placed at least three

women in branch manager positions: April Phillips (27), Nancy Porter (48), and Laura Newcomer (46). [Record No. 32-1, p. 16] In short, the allegation has no basis in fact.

**IV.**

Because Riley has failed to present evidence of a genuine issue of material fact that the decision to terminate her employment was a pretext for age or gender discrimination, summary judgment is appropriate. Accordingly, it is hereby

    **ORDERED** as follows:

    1.    Defendant PNC Bank's motion for summary judgment [Record No. 32] is **GRANTED**.

    2.    Plaintiff Riley's motion in limine [Record No. 34] is **DENIED** as moot.

    3.    The pretrial conference and trial previously scheduled are **VACATED** and **SET ASIDE**.

    4.    All claims having been resolved, this action is **DISMISSED** and **STRICKEN** from the Court's docket.

    5.    A final and appealable Judgment shall be entered this date.

This 30th day of September, 2014.



Signed By:
*Danny C. Reeves* DCR
United States District Judge